# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 18, 2013

Lyle W. Cayce
Clerk

No. 13-40462

In re:  RADMAX, LIMITED,

Petitioner.

---

Petition for a Writ of Mandamus
to the United States District Court
for the Eastern District of Texas

---

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:

Radmax, Ltd. ("Radmax"), petitions for a writ of mandamus directing the district court to transfer this case from the Marshall Division of the Eastern District of Texas to the Tyler Division of that district.[1]  To obtain mandamus relief, Radmax must demonstrate that (1) it has "no other adequate means to attain the

---

[1] Mandamus petitions from the Marshall Division are no strangers to the federal courts of appeals.  *See generally* 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 111.61, at 111-202 to 111-204 & nn. 9–11 (3d ed. 2013) (collecting cases).  *But see La Day v. City of Lumberton, Tex.*, No. 2:011-CV-237, 2012 U.S. Dist. LEXIS 36431, at *6–*12 (E.D. Tex. Mar. 19, 2012) (Gilstrap, J.) (granting motion for intra-district transfer from Marshall Division and stating, "Transfer is appropriate where none of the operative facts occurred in the division [of plaintiff's choice] and where the division had no particular local interest in the outcome of the case.").

No. 13-40462

relief [it] desires,"[2] (2) the Tyler Division is a "clearly more convenient" venue than the Marshall Division, and (3) the district court's ruling to the contrary was a "clear abuse of discretion." *In re Volkswagen of Am., Inc. ("Volkswagen II")*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc). If Radmax makes that showing, and we are satisfied that "the writ is appropriate under the circumstances," we may exercise our discretion to grant mandamus relief. *Id.*

The venue transfer statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The § 1404(a) factors apply as much to transfers between divisions of the same district as to transfers from one district to another.[3] A motion to transfer venue pursuant to § 1404(a) should be granted if "the movant demonstrates that the transferee venue is clearly more convenient," taking into consideration (1) "the relative ease of access to sources of proof"; (2) "the availability of compulsory process to secure the attendance of witnesses"; (3) "the cost of attendance for willing witnesses"; (4) "all other practical problems that make trial of a case

---

[2] This mandamus requirement is satisfied in the motion-to-transfer context:

> [A] petitioner "would not have an adequate remedy for an improper failure to transfer the case by way of an appeal from an adverse final judgment because [the petitioner] would not be able to show that it would have won the case had it been tried in a convenient [venue]." And the harm—inconvenience to witnesses, parties and other[s]—will already have been done by the time the case is tried and appealed, and the prejudice suffered cannot be put back in the bottle. Thus, the writ is not here used as a substitute for an appeal, as an appeal will provide no remedy for a patently erroneous failure to transfer venue.

*In re Volkswagen of Am., Inc. ("Volkswagen II")*, 545 F.3d 304, 318–19 (5th Cir. 2008) (en banc).

[3] 17 MOORE ET AL., *supra* note 1, § 111.21[2], at 111-154 to 111-155 (3d ed. 2013) ("[A] transfer to another division in the same district will be granted if it is more convenient for the parties and witnesses and is in the interest of justice.") (citing, *inter alia*, *Weber v. Coney*, 642 F.2d 91, 93 (5th Cir. Unit A March 1981) (per curiam)).

No. 13-40462

easy, expeditious and inexpensive"; (5) "the administrative difficulties flowing from court congestion"; (6) "the local interest in having localized interests decided at home"; (7) "the familiarity of the forum with the law that will govern the case"; and (8) "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law".[4]  *Volkswagen II*, 545 F.3d at 315.

Applying those eight factors, the district court concluded that five were neutral, one was inapplicable, one "weigh[ed] against transfer," and one weighed "slightly" in favor of a transfer.  After "balanc[ing] . . . the relevant factors," the district court ruled that "Radmax ha[d] not shown that the Tyler Division is clearly more convenient than the Marshall Division" and correspondingly denied the motion to transfer.

We begin by revisiting the district court's analysis of the *Gilbert* factors. First, the court reasoned that "[a]lthough the events and parties are in the Tyler Division, the Tyler and Marshall Divisions have roughly equal access to sources of proof," because "there will not be any significant inconvenience to the parties if they had to transport documents or other evidence to Marshall, Texas as compared to the Tyler Division."  Any such inconvenience may well be slight, but, as we clarified in *Volkswagen II*, the question is *relative* ease of access, not *absolute* ease of access.  *Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous.").  Thus, because "[a]ll of the documents and physical evidence" are located in the Tyler Division, this factor "weigh[s] in favor of transfer."  *Id.*

Second, the district court correctly noted that "[a]ll of the likely witnesses in this case are within the subpoena power of either court."  It thus correctly concluded that "this factor is neutral."

---

[4] Collectively, the "*Gilbert* factors," *see Gulf Oil Corp. v. Gilbert*, 330 U.S. 501.

No. 13-40462

Third, the district court stated that "[t]he Fifth Circuit has established a threshold of 100 miles when giving substantial weight to [the cost of attendance for witnesses]," and the court reasoned that because "Tyler is well less than 100 miles from Marshall. . . . this factor is neutral."[5]  Previously, we explained that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG ("Volkswagen I")*, 371 F.3d 201, 204–05 (5th Cir. 2004) (per curiam).  Indeed, the en banc court reiterated that guidance and characterized it as a 100-mile "threshold" or "rule." *Volkswagen II*, 545 F.3d at 317. We did not imply, however, that a transfer *within* 100 miles does not impose costs on witnesses or that such costs should not be factored into the venue-transfer analysis, but only that this factor has greater significance when the distance is greater than 100 miles.[6]

Fourth, the district court took into account that "transfer will result in delay for all parties" and concluded that "this factor weighs against transfer." The delay associated with transfer may be relevant "in rare and special circumstances," *In re Horseshoe Entm't*, 337 F.3d 429, 435 (5th Cir. 2003), and we have found such circumstances present where a "transfer [of] venue would have caused yet another delay in [an already] protracted litigation," *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989), but we have not elaborated on the circumstances under which delay is "rare and special." We clarify today that

---

[5] The distance is about sixty-two miles.

[6] In its respectful response to the mandamus petition—a response we specifically invited, *see* Federal Rule of Appellate Procedure 21(b)(4)—the district court opined that "it is anticipated that [the requirement for obtaining mandamus] will rarely be satisfied in any case involving a requested intra-district transfer between divisions within 100 miles of each other." Although we appreciate the court's conscientious effort to rule correctly, its evaluation of the 100-mile factor, and of certain other factors that we have examined, is off the mark.

4

No. 13-40462

garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer. Were it, delay would militate against transfer in every case.[7]

Fifth, the district court stated that it was "unaware of any administrative difficulties that would arise from transferring or retaining this case," noting that "[n]either the plaintiff nor the defendant addresse[ed] this factor in detail," and accordingly concluded that this factor was neutral. Neither party alerts us on appeal to any such potential administrative difficulty, and we agree with the district court that none is apparent.

Sixth, the district court found that "the Tyler Division has more local interest in this case than the Marshall Division" but concluded that "this factor weighs only slightly in favor of a transfer" in light of "the greater deference available to the Court when considering intra-district transfers." The deference referred to is respect for "the plaintiffs' choice of venue." *Volkswagen II*, 545 F.3d at 315. A leading treatise takes the position, however, that "the traditional deference given to plaintiff's choice of forum . . . is less" for intra-district transfers." 17 MOORE ET AL., *supra* note 1, § 111.21[2], at 111-155. We need not announce a general standard governing intra-district transfers in all situations; it is enough to note that in this case the local interest factor weighs solidly in favor of transfer.

Seventh, the district court correctly stated that "[b]oth the Tyler Division and Marshall Division are equally capable of applying the relevant law" and concluded that "[t]his factor is neutral." Eighth, the district court properly reasoned that a transfer would not present a conflict of law or require the application of foreign law, and it concluded that this factor had no bearing on its trans-

---

[7] We note that Radmax moved for change of venue promptly—three weeks after being served with process. The district court ruled on the transfer motion 7½ months later, by which time a trial setting has been established.

fer analysis.

In summary, the district court correctly labeled four factors as neutral, incorrectly labeled two as neutral that weigh in favor of transfer, labeled one as weighing against transfer that is neutral, and labeled one as weighing slightly in favor of transfer that, we find, weighs solidly in favor of transfer. Reweighing those factors, we conclude that Radmax discharged its burden of showing that the Tyler Division is clearly more convenient than the Marshall Division and that transfer is therefore warranted.[8]

Having resolved that the district court's ruling was incorrect, we next assess whether it was a "clear abuse of discretion" based on "extraordinary errors" leading to "a patently erroneous result."[9] We previously have granted writs of mandamus to correct erroneous denials of motions to transfer venue. *E.g.*, *Volkswagen II*, 545 F.3d 304; *Volkswagen I*, 371 F.3d 201; *In re Horseshoe Entm't*, 337 F.3d 429. Radmax points out, and we agree, that those cases share striking similarities to this one.[10]

The main guidance from the en banc court in *Volkswagen II*, as it informs this case, is that the district court should have been fully aware of the inadvisability of denying transfer where only the plaintiff's choice weighs in favor of denying transfer[11] and where the case has no connection to the transferor forum

---

[8] We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting "score," is the proper methodology.

[9] *Volkswagen II*, 545 F.3d at 309, 318; *see also id.* at 312 ("[W]e stress[ that ]in no case will we replace a district court's exercise of discretion with our own; we review only for clear abuses of discretion that produce patently erroneous results.").

[10] *E.g., id.* at 315 (noting that "nothing [] ties this case to the Marshall Division except plaintiffs' choice of venue").

[11] In *Volkswagen II*, *id.* at 309, we noted that "the district court gave undue weight to the plaintiffs' choice of venue."

and virtually all of the events and witnesses regarding the case—here, indeed *all* of those events, facts, witnesses, and other sources of proof—are in the transferee forum.[12]  In *Volkswagen II*, 545 F.3d at 318, we classified as an "extraordinary error[]" the "fact that not a single relevant factor favors the [plaintiffs'] chosen venue."  Nothing in *VolkswagenII* even remotely hints that our evaluation of the facts there was limited to interdistrict transfers or to situations in which the venues were more than 100 miles apart.

The facts and circumstances of this case are wholly grounded in the transferee forum (the Tyler Division), which is a clearly more convenient venue, and this case has no connection to the Marshall Division.  Under *Volkswagen*, a writ of mandamus is therefore compelled.

The petition for writ of mandamus and Radmax's motion for stay of proceedings in the district court are GRANTED.

---

[12] In *La Day*, this same district judge made the wise decision that transfer was obviously compelled.  *See supra* note 1.

No. 13-40462

HIGGINSON, Circuit Judge, dissenting:

I agree with the majority that the *Gilbert* factors, weighed properly, favor transfer in this case. But because I disagree that the district court's contrary ruling was a "clear abuse of discretion" based on "extraordinary errors" leading to "a patently erroneous result," *In re Volkswagen of Am., Inc. ("Volkswagen II")*, 545 F.3d 304, 309, 318 (5th Cir. 2008) (en banc), I respectfully dissent from the majority's grant of mandamus relief. In my view, this case differs meaningfully from *Volkswagen II* in several respects.

First, the proposed venue in *Volkswagen II* was 155 miles from the parties, witnesses, and evidence. *Id*. at 317. By contrast, the parties, witnesses, and evidence in this case are only 60 miles from the current venue. This adjusts the analysis with respect to three of the eight *Gilbert* factors: it brings the witnesses within the court's automatic subpoena power under Federal Rule of Civil Procedure 45; it lessens the concern regarding "the cost of attendance for willing witnesses"; and it similarly mitigates "other practical problems" associated with trial at a distant venue. In *Volkswagen II*, we found relevant that the non-party witnesses were "outside the Eastern District's subpoena power for deposition under Fed. R. Civ. P. 45(c)(3)(A)(ii)," so that "trial subpoenas for these witnesses to travel more than 100 miles would be subject to motions to quash under Fed. R. Civ. P. 45(c)(3)." *Id*. at 316 (quoting *In re Volkswagen AG ("Volkswagen I")*, 371 F.3d 201, 205 n.4 (5th Cir. 2004) (per curiam)). That concern is not present here. We noted also that "[w]itnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community." *Id*. That concern is present here, but to a lesser degree. An hour's drive is an inconvenience, but it interferes less with a witness's job, family life, and community engagement. As we recognized in *Volkswagen I*,

> [t]he task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home

8

> responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.

371 F.3d at 205. Accordingly, the conclusion that this case should have been transferred, even if correct, does not follow ineluctably from *Volkswagen II. See Volkswagen II*, 545 F.3d at 312 n.7 ("If the facts and circumstances are rationally capable of providing reasons for what the district court has done, its judgment based on those reasons will not be reviewed." (quoting *McGraw-Edison Co. v. Van Pelt*, 350 F.2d 361, 363 (8th Cir. 1965))).

Second, *Volkswagen II* involved *inter*-district transfer. Before today, we had not explored the distinction between intra-district and inter-district transfer, or taken a position on whether district courts enjoy the same degree of deference in both situations. District courts in this circuit have expressed divergent viewpoints on these matters.[1] Additionally, "[t]here is disagreement about whether the § 1404(a) factors apply to intradistrict-transfer motions."[2] *In*

---

[1] *Compare Liles v. TH Healthcare, Ltd.*, No. 2:11-cv-528-JRG, 2012 WL 3930616, at *6 (E.D. Tex. Sept. 10, 2012) (Gilstrap, J.) ("[C]ourts in this district view 1404(a) motions for intra-district transfer of venue with heightened caution."); *Madden v. City of Will Point, Tex.*, No. 2:09-CV-250 (TJW), 2009 WL 5061837, at *3 (E.D. Tex. Dec. 15, 2009) (Ward, J.) (opining that "greater deference [is] available to [district courts] when considering intra-district transfers"), *and Rios v. Scott*, No. 1:02-CV-136, WL 32075775, at *4 (E.D. Tex. Jul. 13, 2002) (Hines, M.J.) ("[T]rial courts should entertain Section 1404(a) motions for intra-district change of venue with caution, and should not grant the requested relief unless the balancing of convenience and public interest factors results in a firm conclusion that the proposed new venue is decidedly more convenient and in the interest of justice."), *with Cantrell v. City of Murphy*, No. 6:09-cv-225, 2010 WL 786591, at *2 (E.D. Tex. Mar. 1, 2010) (Schneider, J.) ("The § 1404(a) analysis remains the same regardless of whether the party moves for an inter-district or intra-district transfer.").

[2] *See Carolei v. Texas Mesquite Connection*, No. 3:11-CV-2811-L (BH), 2012 WL 3599460, at *1 n.3 (N.D. Tex. Aug. 6, 2012) ("One district court in this circuit has questioned whether the § 1404(a) factors apply to intradistrict transfers, but the Fifth Circuit has not yet ruled on this issue.") (citation omitted); *Johnson v. Lewis*, 645 F. Supp. 2d 578, 583 (N.D. Miss. 2009) (opining that "the *Duncan* standard should apply to purely divisional transfer issues in this district, since [*Volkswagen II*] involved a transfer outside of a particular judicial district and is thus factually distinguishable," but expressing that *Volkswagen II* "might be applicable to a purely

(continued...)

*re Marquette Transp. Co. Gulf-Inland, LLC*, No. Civ. A. H-12-0623, 2012 WL 2375981, at *1 n.1 (S.D. Tex. Jun. 21, 2012). The majority persuasively fills these doctrinal gaps with citations to Moore's Federal Practice; that treatise may prove convincing, but it is not binding law. As noted above, there is an absence of circuit precedent pertaining to intra-district transfer, and, acting in the interstices, district courts have reached different conclusions. "This ambiguity provides another reason why the right is unclear for purposes of the writ of mandamus." *In re Pasquariello*, 16 F.3d 525, 531 (3d Cir. 1994). Just as error is not ordinarily considered "plain" when we "have not previously addressed an issue. . . . [e]ven where the argument requires only extending authoritative precedent," *United States v. Evans*, 587 F.3d 667, 671 (5th Cir. 2009) (internal quotation marks omitted), abuse of discretion is not considered "clear" when we have not spoken on an issue and there is conceptual space for reasonable jurists to disagree, *see DeGeorge v. U.S. Dist. Court for Cent. Dist. of Cal.*, 219 F.3d 930, 936–40 (9th Cir. 2000) (denying mandamus petition because the district court faced a "difficult" issue that was "a question of first impression" that had divided lower courts); *In re Reyes*, 814 F.2d 168, 172 (5th Cir. 1987) (Jones, J., dissenting) ("At the very least, it is imprudent to mandamus the district court in an area of 'doubtful law.' ").

Third, our court voiced concern in *Volkswagen II* that the district court "ignored our precedents." 545 F.3d at 309. That concern does not exist here. The district court's opinion highlighted our precedents and included a discussion of each *Gilbert* factor. *See In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990) (concluding "that this matter is one of those extraordinary cases in which

---

[2] (...continued)
intra-district transfer in a district which had not adopted its own divisional venue practices"); *ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773 LY, 2010 WL 1170976, at *2 n.2 (W.D. Tex. Mar. 23, 2010) (disagreeing with that position).

No. 13-40462

mandamus may be considered" in part because the district court, in a one sentence opinion, made no findings and cited no law).   Several of the district court's findings that the majority corrects pertain to factors about which we had not, until today, elaborated guidance.[3]   In my view, the district court has demonstrated an experienced grasp of the context-specific considerations involved with intra-district transfer. *See, e.g.*, *La Day v. City of Lumberton, Tex.*, No. 2:011-CV-237 (JRG), 2012 WL 928352, at *4 (E.D. Tex. Mar. 19, 2012) (*granting* motion for intra-district transfer); *id.* ("As in all transfer decisions, each set of facts is unique and must be decided on a case by-case basis.").   In denying this motion to transfer, the district judge adhered to similar rulings by other district courts in this circuit denying motions to transfer where the parties, witnesses, and evidence were fewer than 100 miles from the existing venue.[4]   These insights support my view that the transfer ruling in this case was not a "judicial usurpation of power"

---

[3] For example, we had not before ruled, but clarified today, that "[t]he § 1404(a) factors apply as much to transfers between divisions of the same district as to transfers from one district to another," and that "garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer."   I would be especially sensitive to the district court's statement that "[t]he Fifth Circuit has established a threshold of 100 miles when giving substantial weight to [the cost of attendance for witnesses]," and its corresponding conclusion that because "Tyler is well less than 100 miles from Marshall. . . . this factor is neutral."   As the majority remarks, we previously explained that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05.  And our full court reiterated that guidance and characterized it as a 100-mile "threshold" or "rule." *Volkswagen II*, 545 F.3d at 317.   I concur that it is unlikely that the full court intended to imply that a transfer within 100 miles does not impose costs on witnesses or that such costs should not be factored into the venue-transfer analysis, but note that until today we had not clarified our meaning.

[4] *See, e.g.*, *Guzman v. Hacienda Records & Recording Studio, Inc.*, No. 6:12-CV-42, 2013 WL 623289 (S.D. Tex. Feb. 19, 2013) (Costa, J.); *Hutchings v. MSHC Bonner Street Plaza, LLC*, No. 2:12-CV-00074-JRG-RSP, 2012 WL 3150824 (E.D. Tex. Aug. 2, 2012) (Payne, M.J.); *Moss v. Lockheed Martin Corp.*, No. 3:10-cv-1659-M, 2011 WL 197624 (N.D. Tex. Jan. 18, 2011) (Lynn, J.); *Madden*, 2009 WL 5061837 (Ward, J.); *Hovanas v. Am. Eagle Airlines, Inc.*, No. 3:09-CV-0209-B, 2009 WL 980111 (N.D. Tex. Apr. 8, 2009) (Boyle, J.).

No. 13-40462

triggering mandamus rescission. *Volkswagen II*, 545 F.3d at 309 ("[M]andamus is an appropriate remedy for 'exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion.' ").

I respectfully dissent.